Brevard, J.
The principle on which this case depends, was settled in Halliburton’s case, which was decided in this court, at the sittings in Charleston, in January, 1810.
Henry Osborn, whose estate is claimed as an escheat, was, at the time of his death, a citizen of the United States. His brothers, Richard and Thomas Osborn, who claim the estate as his next heirs, by descent, were born in Ireland, before the year 1776, and always remained British subjects.
By the Declaration of Independence, the United States became' an independent nation ; and all who did not acknowledge the independence and sovereignty of the States, were, of course, aliens.
*30 Aliens are those who are born out of the allegiance of the State or Sovereignty under which the estate lies, which gives rise to the question j or, in other words, aliens are those who owed no alie-giance at the time of their birth, to the government under which the ° ,. , . , , , 6 . . , estate lies, at the time when the descent happens, or the escheat •falls.
Richard and Thomas Osborn, neither at the time of their birth, nor at any time afterwards, owed any allegiance to the government of the United States. At the time of the death of their brother Henry Osborn, they were aliens, and incapable of taking by descent.
By the law of nations, aliens ‘are not entitled to claim lands by devise or descent; and for wise political reasons they are generally excluded from the right of holding real estate by the positive laws of most countries. The principles of the common law of England, which have been adopted, and have generally prevailed in this country from its first settlement, deny to aliens the right of taking real estate by inheritance.' The technical reason assigned is the want of inheritable blood. Co. Litt. 2, S. 1 Ventr. 413. 4 D. and E. 300.
It may be alleged, that the inhabitants of this country, at the time of the birth of Richard and Thomas Osborn, owed a common allegiance with the inhabitants of Ireland, to the same sovereign; and as the British courts, on this ground, allow American antenati to inherit lands in England, our courts ought, on a principle of comity, to allow British subjects, born prior to our Declaration of Independence, to inherit lands in this country. But this.reasoning is, by no means, satisfactory'; nor is it compatible with the principles of our government. The doctrine of the British courts seems to be founded on a principle which has been constantly maintained by British jurists and politicians, namely, that a man can never, under any circumstances, divest himself of the allegiance under which he is born. The creed they profess, and.wish to establish, is, “once a British subject, always a British subject.” This may suit them, but not us.
The treaties with Great Britain have no bearing on this case. The sixth article of the treaty of 1783, merely provides against future confiscations and prosecutions, for the conduct of those who took part in the American war. The ninth article of the treaty of 1794, secures to British subjects, then holding lands in the United States, the right to hold and enjoy the same, and the right to dispose thereof by sale or devise; and extends to their heirs and as *31 signs the same legal remedies, which would be incident to such lands, if the same were held and claimed by American citizens.
These treaties cannot, with .propriety, in my opinion, be construed to intend “ a restoration of all individuals to the same condition they were in before the war, as far as existing circumstances would permit.” See 2 Tuck. Black. App. 62. They cannot, therefore, restore to Richard and Thomas Osborn the inheritable blood which they would have possessed, in case the Revolution had not taken place ; nor allow them to succeed as heirs to the estate of an American citizen, although acknowledged to be aliens. The case of Dawson’s lessee against Godfrey, 4 Cranch, 321, must be regarded as an authoritative decision' on this question, for it is the judgment of the Supreme Court of the United States on the construction of treaties. See 3 Binn. 86. Lessee of Jackson vs. Burns. 3 American Law Journal, 23.
For these reasons, I am of opinion that the plaintiff is entitled to judgment.
The couet, unanimously, gave judgment for the plaintiff.